Thank you. Your Honor, I'd like to talk first about the issue of collateral estoppel in this case, and I'd like to avoid at the beginning what I think the trial court was led into, and that is a bit of a rabbit hole on the issue of offensive versus defensive collateral estoppel and whether or not there's any murkiness with respect to the law in that regard, because I don't think we need to address that, that that is dispositive today for purposes of deciding whether or not we apply collateral estoppel in this case. And that is for several different reasons. First, we begin with the concept of finality. We know that in Arizona, at least, by virtue of the Shallot case, that even where we have a trial and a verdict where there's a settlement which results in dismissal, that for purposes of Arizona law, at least, that is not a final conclusion. That is not finality in the sense that would be necessary for issue preclusion. Now, what Arizona case are you relying upon to support your argument that even though there is a trial and a verdict, that if a settlement comes after that, there is not a final decision? What case are you relying on for that proposition? That is Arizona v. Shallot, Your Honor. That was an Arizona Supreme Court case, and that, of course, relied upon an earlier Arizona Supreme Court case known as Glendale v. I will mispronounce this name, I'm sorry, Your Honor, Aldebag, and subsequent to the Shallot case, Your Honor, we had the Campbell case, also acknowledging the idea that even after a trial and with an appeal, once there's a settlement vacating the judgment, that for purposes of issue preclusion, there's not sufficient finality. Did the settlement in this case vacate the judgment? There was no judgment, Your Honor. Did the settlement in this case vacate the prior proceedings? No, Your Honor. The settlement in this case stipulated that there would not be a signed judgment or an entry of judgment as part of the settlement. Hence, no judgment was ever prepared, signed, or entered, which brings me to a point that I think perhaps confused the lower court, and that is the citation to Section 13 of the Restatement of Judgments, second, which talks about allowing final judgment or finality in cases where the decision is, and I think the term quoted, is sufficiently firm. Now, there are comments in Section G to that telling us what constitutes sufficient firmness for purposes of Section 13 of the Restatement, which, by the way, Your Honor, has not been adopted by the Arizona Supreme Court. Shallot still stands as good law in Arizona. But more importantly, the litmus test for finality under Section 13, if you read the comments, at the very end states, the test of finality is whether it is procedurally definite. Here it was not. Arizona has a prescribed procedure for finalizing a decision. Do you think it is relevant here that the parties apparently were attempting to frustrate collateral estoppel by entering into the settlement after they got the result of the judge's decision? I can tell you, Your Honor, that at first blush, you might make that inference. I can tell you also, however, that neither of the parties, for different reasons, wanted there to be a judgment of record in this case. As it turns out, the Shapiros who purchased the house intended to resell it. And I believe they didn't want to have a judgment of record, you know, establishing that there were various defects found in the home. Well, you're saying both parties wanted to frustrate the doctrine that they had in the settlement. And that could well be, Your Honor. And that's a legitimate interest as well. There's no reason why they shouldn't be allowed to do that. The litigants, through the actions, should be able to say at their will, look, we prefer that there not be a final judgment in this case. Well, the Wetzel, for instance, doesn't talk about final judgment. It talks about final decisions. Yes. So there's a difference between a final decision and a final judgment. Why wasn't there a final decision in this case? Because there wasn't a signed judgment which was entered by the Court. Under Rule 58 of the Arizona Rules of Civil Procedure, there is a prescribed mechanism for creating finality. And that goes to the point that we discussed under Restatement Section 13, Your Honor, that talks about the requirement for procedural definiteness or finality. You look to see what procedures are in place in the various jurisdictions to decide whether or not a decision is going to be accorded finality for purposes of collateral estoppel. I was somewhat confused by the red brief's failure to acknowledge the Shattuck case. They don't cite it. They don't mention it. They simply seem to approach this as a question of whether offensive collateral estoppel is applicable in Arizona or not. You don't argue that offensive collateral estoppel cannot be used in Arizona. You say because of the facts of this case, it's not available, relying on the Shattuck case, right? No, Your Honor. We still stand on the proposition that Arizona doesn't recognize the use of it. Period. Period of offensive collateral estoppel based on the Standage Ventures case. But what about the cases in Arizona that do recognize offensive collateral estoppel? It seems like you guys are ships passing in the night. Well, in the Wetzel case, Your Honor, I can tell you something. This is not of record, but it's not surprising to my mind what happened in the Wetzel case, and that is because Mr. Wetzel, who was an attorney and, as you know from reading the case, also a realtor, was a man of some notoriety in the State of Arizona. And with all due respect to Mr. Wetzel, perhaps somewhat of a disgrace to our profession. And I don't think, frankly, that the Supreme Court wanted to have anything else to do with Mr. Wetzel. One thing I would point out, though, with respect to the Wetzel case that's missing here is that in the Wetzel case, you also had an issue, or the lack of an issue, which prevents collateral estoppel in this case. And that is the disparity of interests, which prevail in this case. The fact that in this case, you have a conflict of interest. You can't say that there was privity between American family and Clancy Palmieri because of the reservation of rights and because of the fact that American family might necessarily want there to be a decision, particularly on the business pursuits matter, that would favor non-coverage. Did you make that argument in the district court? I believe we did, Your Honor. Yes. The red brief says, despite the permitted use of collateral estoppel in this case under Arizona law, Clancy and Palmieri waived any arguments to the contrary. This issue was not raised in the lower courts and is therefore waived. Your answer to that is? My answer to that is that's not true. Secondly is that you can raise it as an affirmative defense even in response to a motion for summary judgment. So could you point us to the record where you raised that argument in district  There's no prejudice that I know of to the plaintiff. On collateral estoppel, Your Honor? Yes. It would have to be in response to the motion for summary judgment. Actually, we filed our own summary judgment motion, cross motion on the same point. So you would rely on your footnote number one in your responsive brief, American family, quote, American family is attempting to use offensive collateral estoppel, but under Arizona law, it cannot do so. That's true, Your Honor. Yes. And there is no privity between American family and Clancy and Palmieri. That's also true, Your Honor. And the lack of finality because there is an absence of procedural definiteness. Rule 58A of the Arizona Rules of Civil Procedure specifically describes the procedural mechanism by which a decision becomes final. And it says specifically that it is not final, not only that it is not signed, but it doesn't become final until it is actually entered by the court. That rule exists in order to remove any ambiguity over the question of finality so that we will not have these discussions in the future. But that's finality for purposes of appeal. I'm not convinced that that's the same thing as determining whether or not there is a decision that has been rendered for purposes of determining res judicata issues. Your Honor, I don't Do you have a case in Arizona that definitively says that for a decision to be used in the estoppel context, it has to be reduced to a judgment? We can't find any case that says the opposite, Your Honor. The cases that we do cite say that. But I'm asking you, do you have a case that says what you're arguing precisely, that a case has to be reduced to judgment before it can be considered to be a decision for purposes of res judicata? Do you have a case in the positive that says that affirmatively? We would have to rely again upon the Shallack case, the Aldabog case, the Campbell case. Do you want to read the language in Shallack that proves what you're saying? Well, Your Honor. I mean, you're putting all your eggs in Shallack. Read the language for us that gets you where you want to go. I wouldn't say I'm putting all of my eggs in Shallack. You started out with Shallack. I started out. And it's still there. It's still there. Do you not want to read that part of Shallack that proves your point? Well, I don't have it in front of me, Judge. I'm sorry, but. That's why we have these beady-eyed law clerks. They're going to get it, and you're going to be in trouble if it doesn't support what you just said. Well, I wouldn't refer to them as beady-eyed. I would. That means nothing escapes them. All right? So you don't have Shallack with you? I do, Your Honor, but I don't have the quotation in front of me. Why don't you find it? I mean, you're telling us this wins your case. I'm telling it's one of the reasons, Your Honor, that it wins my case. Well, where is it? Do you have it? I can't think of anything greater than to say that the Shallack case says quite simply that it's not final. You know, I don't accept paraphrases from anybody, including my own brain when I start paraphrasing things. I look at the language. All right, so you don't have the language. You can't read it to me. Not at the moment, Your Honor. No, I don't. Thank you. Did you want to save some time for rebuttal? I would like to save the 3 minutes and 20 seconds I have left. All right. You know, when I was at my confirmation hearing, one of the Senators asked me a question that I didn't want to answer, and I poured myself some water and drank the whole cup. I wish I'd given that much forethought to what I just thought. Man, I'm afraid my mouth is going to get dry in the middle of this, so I better get some water to wet my whistle.  Let's move on to Shallack. Unless the Court has ---- Tell us who you are. I'm sorry. Rob Lewis, Robert Lewis from the Lewis Law Firm. Thank you. Representing American family. Yeah. You don't even talk about Shallack in your reply brief. That's right. And have you read Shallack? I have read Shallack. And do you accept what counsel says that Shallack says? No, I don't. I'm shocked. Go ahead. Shallack is not the ---- In Shallack procedurally, there was a directed verdict, and then they stipulated to dismiss the case as part of a settlement. But there was no litigated decision on the merits. But wasn't there a verdict? A directed verdict. Yes. But it's not reduced to, you know, it's not reduced to a type of finding that ---- You're making very small differences that don't distinguish between a directed verdict and a finding in my mind. Well, there has to be. It's the ---- What does Shallack say about this precise issue? Shallack says that if there is a judgment or a directed verdict and there is a stipulation to dismiss as part of the settlement, that the directed verdict does not have preclusive effect. Okay. Let's try this language. Because no judgment was entered, the verdict does not rise to the level required for collateral estoppel. What do you do with that language? Well, I mean, the problem is it's focusing on this idea of a judgment. And judgment, as opposed to a decision on the merits, and that's where I was trying to go, Your Honor. But ---- Wasn't the issue finality? I mean, isn't the decision in this case could be changed? It's not likely to be changed. But it's not final, is it? It is final. When the parties stipulated to dismiss the matter ---- After they stipulated, that's something else again. I mean, is the judge's decision final here? How else could it be changed? Well, he could change it, I assume. I suppose that could happen in any kind of litigated matter. I mean, I can't think of a situation where ---- Well, if he enters final judgment, it's final judgment. That's a ---- Yeah. You're absolutely right, Your Honor. And my view of it is that if there was a final judgment entered, the judge could set his own judgment aside. I mean, there's ---- How? On a motion to set aside the judgment. Well, but he wouldn't set it aside. I mean, and there are time limits to doing that. Absolutely. At some point, it becomes final if it's not ---- if there's no motion made within that finite period to set it aside. Right. In Arizona, it's Rule 60, and it's 180 days or 6 months, and that's run in this case. So you have a decision, a litigated decision on the merits, finding the fact and conclusion of the law. You have a final dismissal with prejudice, and there's ---- you're outside the time period for setting aside that dismissal. So there's ---- So ---- It's a final ---- it's final. There's nothing else that can be done at this point. The only thing that's lacking is a written judgment, in your view. Right. And, you know, that's kind of elevating form over substance to say that there actually has to be a document in the file, the court file, with final judgment written on it, as opposed to just the findings that are memorialized somewhere. So what's your best Arizona case that says that as long as there is a decision on the merits, there's no need to have a formal entry of judgment for a case to be final for the purpose of res judicata considerations? What's your best case? I think the best case is the Arizona Supreme Court case, and I'm going to mispronounce it, Marquardt, which, you know, addresses, you know, the issue of collateral estoppels that applies to the development of offensive collateral estoppel. And in that case, it was a situation where a gentleman was a judge, and he was caught with a small amount of marijuana when crossing the border into Texas, and he was convicted of a, you know, a crime of misdemeanor. And then that conviction from the Texas judge was used as a preclusive in an action, a disciplinary action before the Supreme Court of Arizona. So what's the language? It's not a judgment. What's the language in Marquardt? I can find it, Your Honor. Thank you. Here's the language that I'm relying on that I think addresses this issue. And it can be found on page 248 of the Arizona Reporter or 213 of the Pacific Reporter. And it's – there's a head note 7 for the – and it starts, Respondent claims his explanation for the circumstances leading to his arrest may foreclose the imposition of any discipline. We reject the suggestion, although Respondent contends he did not intend to or know he was in possession of marijuana. The Texas judge who heard the explanation found him guilty of intentionally and knowingly possessing marijuana. This is a criminal finding. It's a litigated matter. And then I'll go on and read. We believe he is bound by the findings and precluded from maintaining to the contrary before the commission or this Court. There's no mention of a judgment. In fact, you wouldn't expect a judgment. Wasn't the issue in this case the availability of collateral estoppel or offensive collateral estoppel rather than non-offensive? Well, I think it's both. Isn't that what the Court is deciding there? Absolutely. And if you go – and as I read further on, it addresses the Standage case, which was the end-all, be-all case. That's a different issue than finality, though, whether it's available as an offensive matter. Right. And I think the question that I understood is whether or not there's language that requires or a case that requires judgment. Well, there may be language, but, I mean, is that the issue that the Court is confronted with in that case? Well, I think the case is, you know, the common thread through all of this, Your Honor, is that you have to apply a rule of reason. And instead of looking at it and saying as a technical requirement that there's a judgment or something called a judgment that's involved, as opposed to whether or not there was a decision on the merits and that it's sufficiently firm and final. Well, doesn't that get us into a slippery slopes situation? I mean, where do we draw the line? If you want to have a judgment, what do you have to have? That's what judges do. They draw lines sometimes. They listen to the facts and look at the circumstances. And that's what I – that's what the most, I think, practical way of addressing this issue is. Well, the only problem here is this is a State law question, and you're in federal court. So the Supreme Court has told us not to tinker with State law in this type of case. And we would do it if it were Federal law, certainly, but it's – the problem here is that State law, I don't think we're in the business of extending State law or manipulating it or whatever you're attempting to do with it. Well, and I think, Your Honor, we're not attempting to do either of those. I think what we're doing is, I mean, the common thread through these cases, and I concede that the State court cases of Wetzel and then Marcard are not clear. I mean, there's not a bright-line rule anywhere in here that addresses all of the elements of this particular case that have arisen. But what we do have, I think, is we have the common thread that there has to be a decision on the merits. And if you – the reason I'm citing Wetzel and Marcard case as the most persuasive case is because it doesn't involve a judgment. It's just a finding. And if you have this rule that the only thing that can be preclusive is a judgment, then that – it does violence to the whole idea or the reason, the public policy for having collateral estoppel as a – because you could have a very litigated administrative court hearing or administrative ruling that is a litigated fact that has the elements that are common to a subsequent lawsuit. And so, I mean, under those circumstances, the public policy would require or, you know, would require that there be some discretion in the trial court who's asked to apply the issue of collateral estoppel. Can you stand by your assertion that this was waived? Yes, Your Honor. And the reason that we – our point on this, and I can expand on that, is that this particular – he did say in that footnote that there was this issue. American families attempting to use offensive collateral estoppel but under Arizona law cannot do so. Right. But there's no citation of – you know, there's no argument. Judge Burke's finding of fact were never reduced to a judgment, certainly cannot have any collateral estoppel effect. Sounds like an argument to me. Yeah, Your Honor. It's – I guess our point was it wasn't unflushed out to the point where it was a meaningful argument that we could address. Flushed out or fleshed out? Fleshed out, I'm sorry. Maybe that was a Freudian slip. But anyway, Your Honor, that's the way that, you know, we look at it. I think that there has to be some level of explanation such that you put the other side on notice that there's an issue here and that we can, you know, address it and brief it. And so – and as opposed to having this Court go back and, you know, try to figure out what was going on down below. So, counsel, if we disagree with you regarding the collateral estoppel issue, is the case over? No. It's – it's – it's – the case is, you know, has to be tried on the merits. And what we'll do is we'll have to go back and try each and every element that Judge Burke decided. This was an extensive bench trial. Judge Burke had a 12-page minute entry where he had very detailed findings of fact and conclusion of law. And we'll take that, all of that, those resources that went to accomplish these findings and conclusions, and we'll throw them out the window. Because ultimately we'll go back and we'll relitigate the very same issues that Judge Burke found. And then we'll be in the same place that we are now. There's no coverage. But what we're trying to do is say to the Palmieri's and Clancy's – or Palmieri and Clancy, you had an opportunity and you litigated this hotly – this is a hotly contested matter and you litigated it vigorously. And you – there are these findings. You can't now force the American family to relitigate all of these issues and get a second bite at the apple. And your point of privity, it would be what? The point of privity is – well, there's a privity between Clancy and Palmieri, an American family, because there's an insurance contract. And that's addressed in the Vagnozzi case, Farmers v. Vagnozzi, where it applies collateral estoppel to a situation where there's a finding on intentional acts. And Vagnozzi says very – I think very succinctly, what we're hoping to do here is we're recognizing that there is privity if – and we're trying to eliminate the claim of insured v. insurer or injured party v. insurer at the same time. And the Court recognizes that – that privity does apply. And, again, there's no reason to relitigate the exact same findings because now the – although technically it wasn't the same party, it's a real party in interest. The insurance company is the real party of interest. So for those reasons, I think that, you know, privity does exist. I just have a minute longer, and I wanted to quickly address this notion of the Parsons violation. And Parsons – it's no wonder that Parsons is – that case came to that holding. I mean, when I read that now, I think how did something like that ever happen, where an attorney was hired by an insurance company, and he went out and had attorney-client communications with his client, the insured. He visited him in jail and prepared for trial and took a statement – sworn statement from him. And then he turned around and he took that information because it was detrimental to coverage and applied it or gave it to the insurance company who then used it to obviate coverage. And it just offends the notion of, you know, loyalty and confidentiality between the attorney and the client. He was – the client in that case was betrayed. And then the attorney represented the insurance company in the garnishment action, the same attorney, so – trying to obviate coverage so that his former client that he represented and got the confidential information from would then be responsible for the judgment as opposed to the insurance company that paid him. That's the – that's the part of Parsons that just doesn't apply here. Parsons was an extreme case. Here, at most, there was reports back there, but there was never any confidential information given. Thank you. All right, Counselor, you've exceeded your time. Thank you. Thank you. Rebaul, please. I'll be brief since I only have a few minutes left and didn't get a chance to talk about the Parsons issue when I was up. So I will address some of the matters raised by my colleague. The Parsons was a rather bad case. There have been cases after Parsons, the Lake Havasu City case. We have a local district court case named Pang. And what all of these cases really tell us is that an insurance company can't do anything to exploit the confidential relationship between an insured and counsel in order to derive information that it may use for its benefit. In fact, our district court in the Pang case has gone so far as to say simply asking for it is a violation of the duty of good faith and fair dealing. Now, in this particular case, we know that Mr. Beegley, who asked if American Family would hire him to continue defending the Clanceys, was interviewed by an attorney for American Family, Mr. Cuevas, early on in April, and asked a number of questions. And among the things that Mr. Cuevas learned was that Mr. Beegley had had an interview with the Clanceys. And from that interview, he had decided that he thought that Mrs. Clancey might be a contractor. And that if she's a contractor, then the business pursuits exclusion might come into play. It was only a day or two after obtaining this information that Mr. Cuevas formulated a reservation of rights letter. And in it, he cited, highlighted, I might add, the business pursuits exclusion applicable to Mrs. Clancy. It didn't stop there. Over the course of this litigation, for the next number of weeks, in fact, months, Mr. Beegley continued to report to Mr. Cuevas. Mr. Cuevas continued to ask Mr. Beegley questions. Mr. Beegley shared his mental impressions about the strengths and weaknesses of some of the claims and defenses. American Family was given privy to information on how Mr. Beegley viewed the strength of their appeal. And although he thought they had a good argument on the judge's rulings on implied warranty and Ms. Carey's status as a contractor, that overall he didn't think the appeal would be worthwhile because of the fact that damages were awarded on essentially redundant counts, fraud and misrepresentation and whatnot. And so that the end result, the judgment that is, the amount would still be the same. This told American Family information it would otherwise not be privy to, simply that if it stood by and waited, as it planned to do, we now know, if it stood by and waited, the judge would ultimately sign the judgment and then they would have the collateral estoppel that they so desperately seek. And if there's any doubt in the Court's mind as to what was going on in American Family's mind with respect to that matter, you simply go back to the answer that they filed in this complaint. They were complaining about the fact that the Clancy's, that is, Clancy, Palmieri and the Shapiros waited and settled the case and didn't sign or have the judge sign a judgment. And they were using that as some sort of a collusive allegation, the basis of which I'm not really sure, to say that these people had done something that they're not entitled to do. And they were framing up some sort of a defense against these people based on that. So they knew what they were doing. There's an admission in their own pleading and the answer itself. They were aggrieved over the fact that there was no final judgment. They said in their answer, because of that, we know we can't apply collateral estoppel. Well, that would have been the best case scenario for them. But we'll have to do our best to decide what the Arizona courts would have decided on this case. Yes. You've exceeded your time. We thank you to both counsels. The case just argued is submitted for decision by the court.
judges: Cudahy, Trott, Rawlinson